```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KENNETH MOORE                                    :
                     Movant                      :
                -v-                              :
                                                 :
UNITED STATES OF AMERICA,                        :
                                                 :
                     Respondent.                 :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 19, 2015

10-cr-954 (KBF)
10-cr-971 (KBF)
14-cv-3221 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Kenneth Moore, presently incarcerated in FCI Beckley, brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the bases that (1) he received ineffective assistance of counsel at his sentencing hearing due to his attorney's failure to investigate and object to the allegedly false facts that he pointed a weapon at a child during a robbery and that he used an icepick during a violent altercation while in custody awaiting sentencing, and (2) the Government breached his plea agreement by making certain comments at his sentencing hearing. (14-cv-3221 ECF No. 1 ("Pet.").)

On March 30, 2012, the Court sentenced Moore to 120 months' imprisonment, three years supervised release, and a $400 special assessment. (10-cr-954 ECF No. 99; 10-cr-971 ECF No. 48.) The Second Circuit affirmed his sentence on January 17, 2015. United States v. Horne, 552 Fed. App'x 44, 46-47 (2d Cir. 2014) (summary order). For the reasons set forth below, Moore's petition is DENIED.

I.      BACKGROUND

On June 9, 2009, New York City Police Department ("NYPD") officers on patrol in the Bronx stopped a livery cab that was speeding and driving erratically. (Presentence Investigation Report ("PSR") ¶ 22.) When the officers looked inside the car, they found Moore, another man, and two firearms in the backseat. (PSR ¶¶ 24-25.) The officers arrested the two men, and recovered a .40 caliber pistol and ammunition from Moore. (PSR ¶¶ 25-26.)

On July 23, 2010, Moore robbed a Bronx grocery store at gunpoint with three other men. (PSR ¶ 30.) During the robbery, one of the men pointed his gun at an infant. (PSR ¶ 31.) The robbers took approximately $400 from behind the counter and fled in a van. (PSR ¶¶ 33-35.) NYPD officers stopped the van and apprehended the four men. (PSR ¶¶ 37-40.) Moore attempted to run away but was caught by the officers, who discovered a nine millimeter semiautomatic pistol in his waistband. (PSR ¶ 43.)

Moore was charged for this criminal activity in two separate indictments. First, on October 14, 2010, Moore was charged in Counts One, Two, Three, and Six of a seven-count indictment. (10-cr-954 ECF No. 13.) Count One charged Moore with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Count Two charged Moore with Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951-52. Count Three charged Moore with possession of a firearm in connection with the robbery charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (2). Count Six charged Moore with possession of a firearm after having been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1). Second, on

October 18, 2010, Moore was charged in Count One of a two-count indictment with possession of a firearm after having been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1).  (10-cr-971 ECF No. 5.)

Moore, then represented by Charles S. Hochbaum, pled guilty to Counts One, Two, and Six of the first indictment and Count One of the second indictment on October 21, 2011, pursuant to a written plea agreement with the Government (the "Plea Agreement").  (10-cr-954 ECF No. 119 ("Gov't Opp. Br.") ex. A.)  The Plea Agreement stipulated to an offense level of 26 and a corresponding U.S. Sentencing Guidelines (the "guidelines") range of 78 to 97 months' imprisonment.  (Id. ex. A at 4-5.)  The parties agreed to seek neither an upward nor a downward departure from the stipulated guidelines range, and not to "suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, or suggest that the Court sua sponte consider a sentence outside of the Stipulated Guidelines Range."  (Id. at 5.)  They also acknowledged that the agreement did not limit the parties' rights to present to the Probation Office or the Court any facts relevant to sentencing and that the Court was not bound by the Plea Agreement in its determination of the sentence.  (Id.)

During his plea hearing before Magistrate Judge Henry B. Pitman on October 21, 2011, Moore specifically acknowledged, among other things:

1. That he was satisfied with Hochbaum's representation and advice (10-cr-954 ECF No. 43 at 8:16–19);

3

2. That he had not been subjected to any threats or force in order to make him plead guilty (id. at 3:25–4:1-4);

3. That he signed the Plea Agreement (id. at 4:9-11);

4. That, before signing the Plea Agreement, he reviewed it with counsel (id. at 4:15-17);

5. That he understood the charges against him, which Magistrate Judge Pitman reviewed in open court (id. at 8:24–14:16);

6. That after the Guidelines range had been determined, the Court had the authority to depart from the Guidelines and to impose a sentence that was either more severe or less severe than the sentence called for by the guidelines (id. at 16:12-18);

7. That he has a right not to plead guilty and to go to trial, at which he would have certain constitutional rights, including the right to have a jury determine whether he was guilty beyond a reasonable doubt, the right to an attorney, the right to cross-examine and subpoena witnesses, and the right against self-incrimination (id. at 19:16–20:11);

8. That he was waiving his right to challenge his sentence if it fell within or below the stipulated guidelines range in the Plea Agreement (id. at 17:7-14); and

9. That no promises were made to him by the Government outside of those in the Plea Agreement itself (id. at 20:19-25).

Moore then reaffirmed that he still wished to plead guilty, and testified that he "commit[ted] a robbery with others in [the] Bronx" on July 23, 2010. (Id. at 21:1-22.) He also admitted to possessing a firearm on both June 9, 2009 and July 23, 2010, after having previously been convicted of a felony offense. (Id. at 22:14-15; 23:20-22.) Magistrate Judge Pitman found that Moore was "fully competent and capable of entering an informed and voluntary plea," and recommended that the district court accept his plea. (Id. at 25:6-14.) This Court[1] did so on November 14, 2011. (10-cr-954 ECF No. 41; 10-cr-971 ECF No. 32.)

Moore was involved in two violent altercations while in custody awaiting sentencing. The first altercation occurred on June 12, 2011, as reflected in an August 30, 2011 discipline hearing officer report from FCI Beckley. (Pet. ex. B.) Although Moore acknowledged that he had been involved in fighting during this incident, he denied a possession of a weapon charge against him, which was dismissed. (Id.)

The second altercation occurred at MDC Brooklyn on December 30, 2011, when staff observed Moore and another inmate striking each other. (PSR ¶ 15.) The MDC produced two Bureau of Prisons ("BOP") incident reports regarding this incident, both filed on the same day as the incident, one at 12:03 p.m. and the other at 12:10 p.m. (Pet. ex. B.) The 12:03 p.m. report states that security footage of the

---

[1] Action no. 10-cr-954, in which Moore was charged with crimes relating to the July 23, 2010 robbery, was initially assigned to Judge Holwell, and was reassigned to this Court on February 9, 2012. (10-cr-954 ECF No. 47.) Action no. 10-cr-971, in which Moore was charged with possession of a firearm after having been convicted of a felony offense, was initially assigned to Judge Castel, and on December 7, 2010, it was reassigned to Judge Holwell. (10-cr-971 ECF No. 7.) On February 23, 2012, it was reassigned to Judge Oetken. (10-cr-971 ECF No. 40.) On February 29, 2012, it was reassigned to this Court. (10-cr-971 ECF No. 41.)

incident indicated that Moore "assaulted [another inmate] from behind and struck him in the right side of his face area with a homemade weapon that [he] had in [his] right hand." (Id.) The homemade weapon was recovered by the unit officer after the incident. (Id.) The 12:10 p.m. report states that staff observed Moore striking another inmate's head and torso with closed fists. (Id.)

The Court received Moore's Presentence Investigation Report ("PSR") on January 12, 2012. The PSR recommended a guidelines range of 78 to 97 months' imprisonment, based on an offense level of 26 and a Criminal History Category of III. (PSR at 26.) It also recommended three years of supervised release and a $400 special assessment fee. (Id.)

The Court held a sentencing hearing on March 30, 2012. At the hearing, the Government stated that the "robbery in this case was a brazen offense in which [Moore] and other codefendants possessed weapons and went into a grocery store and pointed these loaded weapons at people, including a baby," and the Court acknowledged that "at least one person pointed a gun at the head of a toddler . . . ." (Sentencing Tr. at 5:8-11, 11:5-6.) The Court stated that in making its sentencing determination it had considered the § 3553(a) factors, and that its decision was informed by the brazen nature of the criminal conduct for which Moore was being sentenced, including its potential to cause death, Moore's criminal history, his lack of legitimate work history, and his repeated possession and use of illegal firearms. (Sentencing Tr. at 10-17.) With regard to the MDC altercation, the Court noted that the PSR stated that Moore had used "a six-inch, sharpened, icepick-like

6

weapon" to strike another individual on the side of their head, and that Moore's counsel had not objected to the PSR's recitation of facts concerning the incident. (Sentencing Tr. at 11:13-12:3.) The Court then stated that while the specific circumstances of the altercation were unclear, it was concerned by Moore's commission of an "act of violence while incarcerated," which "occurred against the backdrop . . . of a man who has a number of other arrests as an adult . . . ." (Sentencing Tr. at 12:5-6, 12:16-18.) Taking into account all of these factors, the Court sentenced Moore to 120 months' imprisonment and three years' supervised release. (Sentencing Tr. at 17:15-20.)

Moore timely appealed his conviction and sentence, with Steven Y. Yurowitz serving as his counsel on appeal. On January 17, 2014, the Second Circuit affirmed Moore's convictions and sentences in a summary order, holding that Federal Rule of Criminal Procedure 32(h)'s requirement of prior notice of a departure from the applicable sentencing range did not apply, and that the sentence was not substantively unreasonable. Horne, 552 Fed. App'x at 46-47. The case was remanded for the limited purpose of amending the Statement of Reasons. Id. at 45. Moore filed a petition for a writ of certiorari, which the Supreme Court denied on October 6, 2014. Moore v. United States, 135 S. Ct. 247 (2014).

Moore filed the instant petition for a writ of habeas corpus on April 22, 2014, within the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2255(f)(1); Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a

conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.")  In his petition, Moore argues that that (1) he received ineffective assistance of counsel at his sentencing hearing due to his attorney's failure to investigate and object to the allegedly false facts that he pointed a weapon at a child during a robbery to which he pled guilty and that he used an icepick during a violent altercation while in custody awaiting sentencing, and (2) the Government breached the Plea Agreement by making certain comments at his sentencing hearing.  The Government opposed the petition on October 20, 2014 (Gov't Opp. Br.), and Moore filed a reply on November 17, 2014 (14-cv-3221 ECF No. 13).

II.   LEGAL STANDARDS

    A.   <u>Ineffective Assistance of Counsel</u>

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his or her counsel's performance "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) he or she was prejudiced by counsel's deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland v. Washington</u>. 466 U.S. 668, 687–88, 694 (1984).

As to the first prong of <u>Strickland</u>, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel.  <u>Id.</u> at 688–89.  As a result, reviewing courts "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).  The required showing is further complicated in cases like this one, where a petitioner affirmed the quality of the representation and advice they received from counsel in open court.  See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different.  Strickland, 466 U.S. at 694.  More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  Id. at 693.

    B.    Breach of Plea Agreement

In assessing a claim that the Government breached a plea agreement, courts must review interpretations of plea agreements de novo and in accordance with principles of contract law.  United States v. Vaval, 404 F.3d 144, 152 (2d Cir. 2005) (citing United States v. Riera, 298 F.3d 128, 133 (2d Cir. 2002)).  Plea agreements are construed strictly against the Government and the court should not "hesitate to scrutinize the Government's conduct to ensure that it comports with the highest

9

standard of fairness." United States v. Lawlor, 168 F.3d 633, 637 (2d Cir. 1999). Courts must also look to what the parties reasonably understood to be the terms of the agreement, and because plea bargains require defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance. Id. at 636.  In order to preserve the integrity of plea bargaining procedures and public confidence in the criminal justice system, a defendant is generally entitled to the enforcement of a plea agreement without showing a tangible harm resulting from a breach.  Vaval, 404 F.3d at 155.

In Vaval, the court found that the Government breached a plea agreement after it had explicitly promised not to seek an upward departure and to "take no position concerning where within the Guidelines range . . . the sentence should fall," but then at sentencing "volunteered highly negative characterizations of appellant's criminal history as 'appalling' and his purported contrition as 'disingenuous,'" and asked the court "to consider all of that when making the Court's decision about where to sentence this defendant." Id. at 149-50, 153.  By contrast, the court in United States v. Amico, 416 F.3d 163 (2d Cir. 2005), found that the Government did not breach a plea agreement by making comments at the defendant's sentencing hearing that were "mild, non-provocative, merely informative, and substantially justified" in nature, id. at 168.

III.    DISCUSSION

Moore now petitions this Court to vacate, set aside, or correct his sentence, arguing that (1) he received ineffective assistance of counsel at his sentencing hearing due to his attorney's failure to investigate and object to the allegedly false

10

facts that he pointed a weapon at a child during the July 23, 2010 robbery and that he used an icepick during his violent altercation at MDC Brooklyn, and (2) the Government breached the Plea Agreement through its characterization of Moore's offenses and the MDC Brooklyn altercation at the sentencing hearing. For the reasons set forth below, both arguments lack merit, and Moore's petition is denied.

No evidentiary hearing is necessary in this action. The combined submissions of the parties provide sufficient basis to deny the petition, and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its view on the facts as alleged by Moore, including the details added in his petition. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (court need not hold an evidentiary hearing where the combined submissions of the parties provide a sufficient basis to deny the petition).

### A. July 23, 2010 Robbery

#### 1. Ineffective assistance of counsel.

Each of Moore's allegations that he received ineffective assistance of counsel in connection with the Court's consideration of the pointing of a weapon at an infant during the July 23, 2010 robbery is contradicted by the record. First, the Court did not state that Moore himself pointed a weapon at an infant during the July 23, 2010 robbery, nor did the Government assert that he did. Rather, the Court merely acknowledged that "at least one person pointed a gun at the head of a toddler," (Sentencing Tr. at 11:5-6), which reflected Paragraph 31 of the PSR, which stated that "one of the defendants pointed a gun" at an infant, (PSR ¶ 31), as well as the Government's sentencing memorandum, which noted that "[t]he defendants pointed

11

their guns at people in the store, including an infant child, and threatened them," (10-cr-954 ECF No. 62 at 2). Further, Moore does not dispute that at least one of the participants in the robbery pointed his gun at an infant. Moore thus cannot meet the first <u>Strickland</u> requirement to show that counsel's performance was deficient in not objecting to an assertion that he pointed a gun at an infant during the robbery, because there was no such assertion in the record or at the sentencing hearing.

Moore also cannot meet the second prong of <u>Strickland</u> because he is unable to show that there is a reasonable probability that had counsel clarified that Moore did not point a gun at an infant during the robbery, the result of the proceeding would have been different. Since the Court only took into account the fact that one of the robbery participants, and not necessarily Moore himself, had pointed a gun at an infant, even an affirmative statement by counsel that Moore did not personally point a gun at an infant would not have made a different outcome reasonably likely.

2. <u>Breach of plea agreement.</u>

Moore argues that the Government's references to the pointing of a gun at an infant during the robbery, both in its submissions and during the sentencing hearing, constituted improper sentence advocacy and thereby breached the Plea Agreement. The Court disagrees. During the sentencing hearing, the Government noted that the "robbery in this case was a brazen offense in which he and other codefendants possessed weapons and went into a grocery store and pointed these loaded weapons at people, including a baby." (Sentencing Tr. at 5:8-11.) While this statement was perhaps not as precise as would be ideal, it correctly describes the

nature and circumstances of the offense, and does not rise to the level of the "highly negative characterizations" at issue in Vaval.

Moreover, in the Plea Agreement, the parties preserved the right to present facts relevant to Moore's sentencing to the Court, and the nature and circumstances of the offense are relevant to a court's sentencing under Federal Criminal Code § 3553(a).  Even if Moore did not personally point a gun at an infant during the robbery, the Court appropriately took that fact into account because Moore pled guilty to conspiring to commit a Hobbs Act robbery, and a conspirator is liable for "all unlawful acts of the conspiracy that are reasonably foreseeable, even without direct knowledge of them." United States v. Mittelstaedt, 31 F.3d 1208, 1219 (2d Cir. 1994).  Accordingly, the Government's statement did not breach the Plea Agreement.

Moore further points to the Government's comments during the sentencing hearing that Moore's firearms offense was "close in time to the robbery," that he has "done very little with his life other than commit robberies and gun offenses," and that "[p]revious terms of incarceration and other punishments don't seem to have deterred him" as implicit requests for an above-guidelines sentence, in breach of the Plea Agreement.  (Sentencing Tr. at 5:5-8, 5:11-13.)  These statements are also relevant considerations for the Court under § 3553(a), presented in a mild and informative manner, and therefore are not breaches of the Plea Agreement.

13

B.     December 30, 2011 Altercation at MDC Brooklyn

1.     Ineffective assistance of counsel.

Moore's argument that his counsel failed to object to or investigate references to his use of a weapon during the December 30, 2011 altercation in the record or during the sentencing hearing similarly does not satisfy either prong of Strickland.

First, it should go without saying that the August 30, 2011 discipline hearing officer report cannot support Moore's argument, because it was written several months before the altercation at the MDC, and at a different penal institution.  The two BOP reports that actually do address the December 30, 2011 altercation also do not support Moore's assertion that he did not use a homemade weapon resembling an icepick.  The 12:10 p.m. report states that Moore was observed attacking another inmate with closed fists, which is corroborated by the 12:03 p.m. report, which also states that security footage showed after the fact that Moore attacked the inmate with a weapon, and that the weapon was in fact recovered from the area where the incident had occurred.

Taken together, the two relevant BOP reports along with the recovery of the weapon establish that Moore used a homemade weapon during the altercation.  As a result, Moore fails to meet the first prong of Strickland because he has not shown that his attorney's failure to investigate or object to references to Moore's use of a weapon during the December 30, 2011 altercation counsel was an error so serious that his attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

Of course, even where petitioner's counsel's performance has been constitutionally deficient, petitioner must also show that, but for the deficient performance, there is a reasonable probability that the result would have been different.  United States v. Torres, 129 F.3d 710, 716 (2d Cir. 1997).  A claim that counsel's assistance was so defective as to require reversal or a conviction must meet both components of Strickland, and Moore's allegations fail to do so.  Id.  Specifically, Moore claims that if counsel had properly investigated the altercation at MDC Brooklyn, there is a reasonable probability that the Court would have imposed a lesser sentence.  The record, however, reflects that the Court took the altercation in context: "These crimes and this incident at the MDC occurred against the backdrop . . . of a man who has a number of other arrests as an adult . . . ."  (Sentencing Tr. at 12:16-18.)  The Court acknowledged that certain aspects of the altercation were unclear from the submissions, but that it was particularly focused "the act of violence while incarcerated."  (Id. at 12:5-6)

In addition to the violent altercation at MDC Brooklyn, the Court's sentencing determination took into consideration the brazen nature of the criminal conduct for which Moore was being sentenced, including its potential to cause death, Moore's criminal history and lack of legitimate work history, and his repeated possession and use of illegal firearms.  (Sentencing Tr. at 10-17.)  The Court also stated that it had considered all of the § 3553(a) factors.  (Sentencing Tr. at 16:6-7.)  In sum, Moore's altercation at the MDC was simply one point among many considered by the Court, and a minor one at that.

Moore therefore fails to meet the second prong of Strickland because the Court made clear that it was taking the altercation into account as an act of violence while incarcerated, and Moore did not show that he was prejudiced by his counsel's performance such that there is a reasonable probability that the outcome would have been different.

      2.     Breach of plea agreement.

Moore argues that the Government breached the Plea Agreement by advocating false assumptions about the use of the icepick weapon during the altercation. As mentioned above, the BOP reports establish that Moore in fact used a homemade weapon during the December 30, 2011 altercation. Accordingly, the Government did not breach the Plea Agreement.

    C.    Preservation of Breach of Plea Agreement for Appeal

Moore also claims that counsel performed deficiently in not preserving the breach of Plea Agreement for appeal, and in not raising the breach of the Plea Agreement on appeal. A party who fails to raise an issue on direct appeal and subsequently endeavors to litigate the issue via a § 2255 petition must "show that there was cause for failing to raise the issue, and prejudice resulting therefrom." United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995) (quoting Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993)). Since Moore's ineffective assistance claim regarding the breach of the Plea Agreement lacks merit, he cannot show valid cause for failing to bring his claim on direct appeal. Moreover, because the Government did not actually breach the Plea Agreement, Moore cannot establish prejudice

16

resulting therefrom. Moore's preservation claim is therefore procedurally barred from federal habeas review.

IV. CONCLUSION

For the reasons set forth above, Moore's petition to vacate, set aside, or correct his sentence is DENIED. The Court further declines to issue a certificate of appealability, as Moore has not made a substantial showing of a denial of a federal right. See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).

The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:   New York, New York
         February 19, 2015

_____
KATHERINE B. FORREST
United States District Judge

Copy to:

Kenneth Moore
63951-054
FCI-Beckley
P.O. Box 350
Beaver, WV 25813